UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN CHRIS KOTSIS,<br><br>INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>Vs.<br><br>UNITED PARCEL SERVICE, INC., A DELAWARE CORPORATION,<br><br>Defendant | Case No.: 23-1111<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## I.  NATURE OF THE ACTION

1. This is a class action suit brought by Plaintiff on behalf of a nationwide class of consumers who, based on Defendant's deceptive and fraudulent conduct, purchased insurance for shipping things of value, including gold coins, via UPS, suffered a loss, and UPS has refused to compensate them for their losses. Despite Defendant's employee's and its website's representation and the customers' reasonable expectations that such insurance would provide coverage for the items shipped, for example, gold coins, shipped interstate, UPS has repeatedly denied insurance claims related to the loss or damage of these items, claiming they are not covered under the excessively complex and impenetrable terms and conditions that not even UPS's employees understand, or they and its website shipping tool can effectively communicate to consumers.

## II.  PARTIES

2. Plaintiff, John Chris Kostis, is a citizen of Washington State and used UPS's services to ship gold coins interstate, for which he purchased insurance from UPS.

3. Defendant, United Parcel Service, Inc., is a Delaware corporation with its principal place of business at [UPS's address]. UPS provides package delivery services, including insurance options for packages, to consumers across the United States.

### III.   JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. § 1332(d) as this is a class action where the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 class members, and at least one member of the class is a citizen of a state different from Defendant. The venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District and because UPS conducts business in this District.

### IV.   FACTUAL ALLEGATIONS BACKGROUND

4. On or about January 22, 2022, Plaintiff entered a contract with Defendant for the shipment of a package of goods from his residence, 15439 SE 42nd St, Bellevue, Washington, to Dillon Gage 11925 N Stemmons Freeway, Suite 180, Dallas, Texas 75234, tracking number 1Z385FA1A799533985.

5. The package contained 11 1-ounce American Gold Eagle Coins

6. Defendant agreed to deliver the package to a gold coin purchaser's address in Dallas, Texas, within three days or by January 27th, 2022.

7. As part of UPS's online shipment label processing, value declaration, and insurance order flow, Plaintiff was told, "The declared value you entered requires that you follow the special procedures," which included hand delivery to a specific subcategory of UPS agents that specifically did not include UPS Stores or shipping outlets, or drop boxes, but did include UPS pickup and delivery agents.

8. In addition to delivering the package of gold coins directly to a UPS employee agent, Plaintiff was prompted to pay a separate "additional option fee" of

$243.75 (the "Insurance Premium") to insure for the loss or damage to the shipment based on the declared value.

9. Plaintiff's doorbell camera recorded his meeting with UPS's pickup agent that came to his door and his handing over of the package.

10. UPS's agent asked what was in the package, to which Plaintiff responded that the package contained (**American Gold Eagle) gold coins worth over $25,000**.

11. The UPS Agent asked whether the package was insured, to which the plaintiff confirmed he had paid the Insurance Premium or additional amounts UPS charged to insure the package if UPS lost it. At no point did UPS's Agent or its automated web shipping flow software parse Plaintiff's description of the goods to advise Plaintiff that UPS did not "insure" the shipment of coins or precious metals.

12. Neither UPS's agents nor its web workflow systems advised Plaintiff that his American Gold Eagle coins package would not be insured if UPS lost or misdelivered his package because of a disclaimer buried in a long list of hard-to-parse disclaimers.

13. Defendant UPS sent Plaintiff an automated communication dated February 18, 2022, stating it had lost the Kostis' gold coins:

> **WE HAVE BEEN UNABLE TO PROVIDE SATISFACTORY PROOF OF DELIVERY FOR THE ABOVE SHIPMENT. WE APOLOGIZE FOR THE INCONVENIENCE THIS CAUSES**.

Acknowledging Defendant UPS lost Plaintiff's gold coins.

14. UPS's automated system provided Plaintiff with a claim form to file his claim.

15. Plaintiff filed his claim.

16. Plaintiff was advised that his claim was being processed and that he would be paid the amount of his loss.

17. Only after many weeks and months of delay and, cumulatively, entire days spent by Plaintiff on the phone navigating UPS's impossibly frustrating phone maze and long waits was Plaintiff advised that a person higher up in the claims division had

disapproved the claim because UPS did not cover the shipment of currency. In fact, gold coins are not currency. However, other parts of UPS's "terms and conditions" do deny liability for precious metals. Even UPS's own agents do not understand that its "terms and conditions" exclude coverage for gold or any valuable metal.

18. After days of calls to UPS, wending through a futile myriad of barriers to get a person with authority to help explain the denial, eventually, Plaintiff was routed to a secret department not accessible to the public with limited hours whose phone agent explained they would reconsider the rejection of the claim for the reasons Plaintiff had presented. No response ever came from UPS.

19. These calls to UPS ended several times with UPS's agent's promise that someone would reconsider the decision and get back to Plaintiff. No one ever called back.

20. After several rounds of hearing that something might be done and no response, UPS's agents routed the call to a department with an agent who explained that Plaintiff could file a claim with the Better Business Bureau. In fact, the Better Business Bureau has no ability to resolve such claims, nor does UPS have any understanding with BBB to honor a mediation of a customer complaint. This customer disservice ploy is yet another offramp to deny claims. One can only imagine the UPS's software/flow chart designer's bemusement when they added this option to UPS's phone maze flow chart.

21. UPS's website lists hundreds of pages of "terms and conditions" that describe, among other things, what claims UPS will dishonor. Not even UPS's agents knew why gold coins were not insured. How could a mere customer be made aware of this?

22. If UPS can automate a prompt suggesting the customer needs to hand a package directly to a competent UPS employee and that a special fee needs to be paid in case UPS loses or destroys an expensive item, UPS could easily parse the description of the items to determine whether the item can be sent using UPS's system and warn the customer if UPS would not cover a claim for loss of such item. By not making any effort to parse the goods being shipped by the public, UPS collects hundreds of millions of dollars of

ROSSI & CO., P.C.
616 33RD AVE. GIG HARBOR, WASHINGTON 98335
RGR@VIHC.COM 303.222.0300

"additional option fees" (which clients assume are insurance premiums) only later to have the claims denied. This is blackletter law fraud.

23. None of the additional option fees or other fees collected for shipments it refuses to cover are ever repaid to the customers. UPS should not be allowed to collect payments for services it does not perform, and charge fees to customers for promises to reimburse them for losses UPS never intends to honor.

24. Due to these actions, many customers like Plaintiff are being defrauded by UPS in a carefully constructed multi-state system to defraud.

25. Due to Defendant's breach of contract, Plaintiff and others similarly situated have suffered damages greater than $5,000,000.

V. CLASS ACTION ALLEGATIONS

26. The proposed class consists of the 31 million customers who ship 6.2 billion packages a year using UPS, and for which UPS claims that .5% of those packages are lost.

VI. UNREASONABLY UNCLEAR DISCLAIMERS OF COVERAGE AND FRAUD

23. Customers have a reasonable expectation of meaningful and responsive customer service short of having to sue a company for an appropriate response to their valid complaints.

24. UPS's Customer Service Is Designed to Frustrate. It is not a glitch but a feature and constitutes a deceptive and fraudulent trade practice.

25. UPS is one of the largest shipping companies in the world, but its customer service is notoriously bad. Customers routinely must wait on hold for hours, only to be transferred to multiple departments before they can hope to get their issues resolved. And when they are finally routed to speak to a representative, they are often met with unhelpful or rude service.

26. There are several reasons why UPS's customer service is so bad. One reason is the company has a high turnover rate for customer service representatives. This means

that there are always new people learning the ropes, which can lead to mistakes and delays.

27. Another reason is that UPS's customer service is outsourced to call centers in other countries. This means customers often must deal with representatives who speak English as a second language and have no authority to address customer concerns. This is not only bad customer service but a deceptive trade practice suggesting to customers that their concerns will be addressed. In fact, they are being dumped off into a dead-end, wasting customers' time and not providing the services the customers could reasonably expect from a service UPS is selling.

28. UPS has created carefully crafted, strict limitations on what customer service representatives are allowed to do – which is virtually nothing. This policy is designed to protect the company from paying claims, solving problems, or assuming liability for negligence, making it impossible for representatives to resolve customer issues.

29. Due to these factors, UPS's customer service is designed to frustrate customers and waste their time in ways that are not compensated. This is a deliberate strategy on the part of the company which, in this and millions of other customer cases, entails deceptively and fraudulently collecting money for "insuring" a shipment and then denying the claim because it fits within the almost infinite number of categories of items that cannot be insured.

30. Even the suggestion that UPS is "insuring" the packages is deceptive. UPS does not actually issue insurance for the premium or payment it collects. UPS is not licensed to sell insurance in any state. UPS's deliberate effort to take advantage of customers' reasonable insurance coverage expectations in the event of a loss is fraudulent and deceptive.

31. In a recent survey, UPS was ranked as one of the worst companies for customer service. The survey found that 70% of customers had a negative experience with UPS's customer service, and 50% of those customers said they would not use UPS again.

32. UPS's poor customer service costs customers billions of dollars a year and the company and its shareholders money. A recent study estimated that UPS loses $1 billion yearly due to customer dissatisfaction.

33. UPS is one of many companies that design its customer service to frustrate customers. Many large companies do this because they know that most customers will not take the time to complain, or if they do, they will eventually give up because of the systems UPS has put in place to frustrate any efforts to recover. UPS's customer support call flow system is scientifically designed to thwart any customer from seeking and obtaining meaningful help.

34. However, the prevalence of this strategy is becoming increasingly risky for companies like UPS. As more and more customers turn to social media to complain about their experiences, and a statistical and internal communication record becomes available, companies like UPS are starting to pay the price for their poor customer service as a deliberate and calculated deceptive or fraudulent business practice. Thousands of examples of these events are available on these social networks, including websites such as Reddit's "I hate UPS."

35. In the age of social media, it is more important than ever for companies to have good customer service. UPS's customer services debacle hurts itself. If a company does not have good customer service, it will eventually lose customers to its competitors, but due to barriers to entry and oligopolistic lack of competition, the atmosphere of competition in the air and ground delivery industry is minimal, and all the companies have adopted almost identical systems to frustrate and defraud their customers. The same software engineers and subcontractors probably design the plans.

## VII.   BREACH OF CONTRACT.

36. Plaintiff and those in this class of UPS customers reasonably believed he had purchased insurance for the delivery, and UPS did not honor the terms of the insurance contract.  UPS is liable for breach of contract. Plaintiff suffered damages because of UPS's breach.

VIII.   FRAUD.

37. UPS knowingly made false or misleading statements about its insurance policies to induce Plaintiff and other customers to purchase them. As such, UPS is liable to Plaintiff for treble damages and attorneys' fees for its fraud. UPS made a material misrepresentation of fact, Plaintiff relied on the misrepresentation, and Plaintiff suffered damages due to the misrepresentation.

IX.   UNFAIR OR DECEPTIVE TRADE PRACTICES.

38. Federal law prohibits unfair or deceptive trade practices. UPS's actions constitute unfair or deceptive trade practices under the Federal Trade Commission Act (FTC Act). UPS engaged in a deceptive act or practice that caused the customer injury.

IX.  CLASS ACTION FOR BREACH OF CONTRACT, NEGLIGENCE, FRAUD, AND DECEPTIVE TRADE PRACTICE

39. Plaintiff alleges defendant UPS was either negligent, grossly negligent, acted deceptively, or acted with a deliberate intent to defraud in its design of its workflow, web interface, and its programming of its customer-facing web interface to collect fees it did not earn, and that its action to sell its services and it is charging additional fees purporting to cover UPS's loss or mishandling of customer shipments is illegal deceptive and fraudulent. As a result of Defendant UPS's actions, Plaintiff and other customers similarly situated suffered and continue to suffer injuries because of UPS's negligent, grossly negligent, deceptive, or fraudulent activities.

40. Due to Defendant's breach of contract, Plaintiff has suffered damages of more than $75,000.

Plaintiff is entitled to recover damages for the following:

a. The value of the goods;

b. The cost of shipping the goods;

c. The cost of replacement goods;

d. Lost profits;

1.  e.  Fraud;
2.  f.  Deceptive Trade Practice/Consumer Fraud;
3.  g.  The amount UPS collected as "additional services" or Insurance Premium;
4.  h.  Attorneys' fees and costs; and
5.  i.  Punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendant in the amount of $150,000, the Class of Plaintiff's similarly situated in an amount not less than $5,000,000 or to be determined at trial, plus costs and attorneys' fees.

Respectfully submitted,

_[signature]_

_____
Ronald G. Rossi for
Rossi & Co. P.C.

Attorneys for Plaintiff and the Proposed Class